[No. 1696.]

## Wensel Wagner v. The State.

1. **Slander — Evidence.**— In prosecutions for slander by imputing to a female a want of chastity wherein the accused charged her with specific acts and conduct, the rule of evidence limits the defensive proof to such specific acts and conduct. But if, as in this case, the imputation of a want of chastity be general, as that the impugned female "is a whore," or "is a d—d whore," the rule is different, and under our statute (Penal Code, article 646), which permits the defendant, in justification, to show the truth of the imputation. he would be entitled to prove any succession of specific acts going to establish its truth, or facts from which the jury would be warranted in finding the imputation true.

2. **Same — Evidence — Term Defined.**— A "whore" is defined to be "a woman who practices unlawful sexual commerce with men; especially one who does it for hire." That a woman is a whore may be proved by her general reputation, or by proof that she practices unlawful sexual commerce with men. If the latter mode be adopted, it can be effected by showing the successive individual instances in which she practiced such commerce, leaving the jury to determine from the number of times and the circumstances under which she practiced such commerce, whether or not she is a whore. Every unlawful act of sexual commerce would tend to establish the truth of the charge, and consequently would be legitimate and admissible evidence.

3. **Same.**— Proof that, prior to her marriage with her husband, the impugned female lived with him in adultery, is not competent evidence to establish her character as a whore, and, in this case, was properly excluded. But the charge being that the prosecutrix "*is* (not *was*) a whore," it was error to exclude proof that she practiced unlawful sexual commerce with other parties than her husband.

4. **Same.— Charge of the Court** instructed the jury that, "if they believe the defendant not guilty, they will acquit him." Such a charge in effect instructs the jury that they must find the defendant guilty, unless they believed from the evidence that he was innocent, and is error.

Appeal from the County Court of Lavaca. Tried below before the Hon. T. A. Hester, County Judge.

The conviction in this case was for the slander of Catherine Cervenka, in Lavaca county, Texas, on the 4th day of November, 1883, by charging her, in the presence of John Frederick and others, with being "a whore," and "a d—d whore." A fine of $100 was the penalty assessed against the appellant.

Mrs. Catherine Cervenka was the first witness for the State. She testified that on or about November 4, 1883, she was at the house of Mrs. Frederick, in Lavaca county, Texas. While she was there the defendant came to that house, and, in the presence of John Frederick and Mrs. Frederick, complained to the witness that her dog was in the habit of intruding upon his pasture and running his stock. He told the witness that she must tie her dog at home or he would kill him. Witness told him not to kill her dog, when he retorted that the witness was a whore. Witness asked him to repeat what he said, and he said: " You are a d—d whore, and I can prove it." The whole of this conversation occurred in the presence of John Frederick and his wife, in Lavaca county, Texas, on the day alleged in the indictment. Witness had been married for seven years, and was the mother of three children — two dead and one living.

John Frederick testified through an interpreter, for the defendant, that he and Mrs. Catherine Cervenka lived in the same neighborhood; that he lived in that neighborhood before Mrs. Cervenka moved into it, and has lived there ever since; that he knew Mrs. Cervenka, and was familiar with her reputation for chastity in that neighborhood, and knew that it was very bad. Her general reputation for chastity has been exceedingly bad ever since she moved into that neighborhood, and before the filing of this complaint. The witness heard the defendant call Mrs. Cervenka a whore at the time mentioned by Mrs. Cervenka. She cursed the defendant before the defendant denounced her as a whore. The defendant came to witness's house while Mrs. Cervenka was there, and the two quarreled about a dog running the defendant's cattle.

On cross-examination the witness stated that he did not, in March, 1884, tell the county attorney that Mrs. Cervenka's reputation for chastity was good. If the county attorney asked him any such question, he did not understand it. Witness could not speak the English language very well, and did not know the meaning of the English word "chastity." Being asked who he had ever heard question Mrs. Cervenka's reputation for chastity, he replied: "Everybody — her husband for one," but he could not call to mind the name of any other person. With regard to his reputed conver-

sation with the county attorney, the witness stated that he spoke but a few words to Mr. Green (the prosecuting attorney) on that occasion; that he did not go into Green's office, but merely stood at the door and exchanged a few words. He admitted that he came to town with Mrs. Cervenka in the same wagon, and for the purpose of testifying in behalf of the State.

Mrs. Annie Frederick, testifying for the defense, corroborated the evidence of her husband in every essential particular. She was asked by the counsel for the defense if, at a public party, on or about June 24, 1883, in Lavaca county, Texas, she saw Mrs. Catherine Cervenka kiss one Clofander, and if, afterwards, on the same occasion, she saw the said Catherine Cervenka follow the said Clofander off some distance into the grass, and if it was dark at the time she saw such proceedings, and if Clofander was related in any way to Mrs. Cervenka, and if other parties could have seen such proceedings as well as herself, the witness. The State objected, first because the question was leading, and second because it was an attempt to introduce evidence of special acts in proof of general reputation, and third because it was immaterial and irrelevant. The court sustained the objection.

On cross-examination the witness denied that in March, 1884, she told Mr. Green, the prosecuting attorney, that Mrs. Cervenka's reputation for chastity was good. She could not then speak the English language, and no such question was asked her by Mr. Green. The witness stated that her family and the Cervenkas had been on friendly terms until about March, 1884. About that time witness's husband began to drink with the defendant occasionally, and Mr. Cervenka terminated the prior existing friendship by accusing Mr. Frederick of turning against him.

Frank Wagner, a nephew of the defendant and a cousin of Mrs. Catherine Cervenka, who, in turn, was a niece of the defendant, testified for the defense that he was perfectly familiar with Mrs. Cervenka's reputation for chastity in the neighborhood in which she lived, and that it was very bad both before and after the filing of this complaint. Witness was friendly both to the prosecutrix and the defendant. The defense then proposed to prove by the witness that Mrs. Cervenka lived in adultery with her husband for several months before she married him, and that she married him eventually only to escape prosecution. The State objected to the proof and the objection was sustained. Witness could not call to mind the name of any person whom he heard question the reputation of Mrs. Cervenka for chastity, prior to the filing of this complaint.

Several additional witnesses testified, for the defendant, that Mrs. Cervenka's reputation for chastity in the neighborhood was bad, both before and after the institution of this prosecution. But one of these several witnesses was able to call to mind the name of any person who spoke of Mrs. Cervenka's reputation for chastity. That witness could remember no one who criticised Mrs. Cervenka's reputation as bad but Frank Wagner, who was a relative of both the defendant and the prosecutrix. Two witnesses on behalf of the State testified that they lived in the neighborhood in which the prosecutrix lived, and had lived there two years, during which time they had never heard Mrs. Cervenka's reputation for chastity questioned or discussed. Both of these witnesses admitted that they lived in seclusion, neither visiting nor receiving visitors, nor attending public gatherings.

P. H. Green, county attorney of Lavaca county, testified, for the State, that during the March term of the county court he had a conversation in his office with John Frederick and his wife Anna. John Frederick told witness on that occasion that he was present and heard the defendant apply the slanderous epithets to Mrs. Cervenka as charged. He also told the witness that he had lived near Mrs. Cervenka for three years, and that, in that time, he had never heard a word uttered against her reputation for chastity. This conversation was carried on in the English language, of which John Frederick had ample knowledge to conduct an ordinary conversation. Witness's conversation with Anna Frederick was carried on through an interpreter (her husband). Witness told the interpreter to ask her if she heard the slanderous words applied to Mrs. Cervenka by the defendant, and she replied in the affirmative. Witness then caused the interpreter to ask her if Mrs. Cervenka's reputation for chastity was good, and she replied in the affirmative. Witness had no knowledge of the Bohemian language, in which this conversation was carried on, and could not say that his questions to Anna were propounded as he asked them. He only knew that she replied as stated.

The motion for new trial raised the questions discussed in the opinion.

*Bagby & Allen*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. In this case the imputation of want of chastity in the prosecutrix consisted in the assertion by defendant,

in the hearing and presence of the parties named, that said prosecutrix was "a whore" or "a damned whore." "A whore" is defined to be "a woman who practices unlawful sexual commerce with men; especially one who does it for hire." The charge was a general one in contradistinction to one which would impute want of chastity by charging certain specific acts and conduct. In the latter case the specific acts and conduct must be proved as alleged, and the prosecution would be prohibited from proving any other and different acts than the ones alleged. (*Patterson* v. *The State*, 12 Texas Ct. App., 458; *Conlee* v. *The State*, 14 Texas Ct. App., 222.)

But where the imputation is general, as in this case, then under our statute which allows the defendant in justification to show the truth of the imputation (Penal Code, art. 646), we are of opinion he would be entitled to prove any succession of specific acts going to establish the truth of such imputation, or from which the jury might reasonably be warranted in finding the imputation to be true. That a woman is "a whore" may be proven by her general reputation, or it may be proven by evidence that she practices unlawful sexual commerce with men. If the latter mode be attempted, we do not well see how it is to be effected otherwise than by showing the successive individual instances in which the commerce has been practiced, and leaving the jury to determine whether or not the woman is a whore from the number of times and the circumstances under which she has practiced such unlawful commerce with men. Every act of unlawful commerce would tend to establish the truth of the charge, and consequently would be legitimate and admissible evidence.

Where a woman has lived in adulterous intercourse with a man whom she afterwards marries, we do not think such previous adultery would tend to establish in any manner a charge made against her subsequently that she was a whore. For it is not unreasonable or improbable that by the marriage she has not only repented of her sin but condoned it and become virtuous. Such evidence would be remote and foreign to the issue. The charge is, not that the prosecutrix has been or once was a whore, but that she is a whore.

We are of opinion the court did not err in excluding the proposed evidence to the effect that the prosecutrix, before her marriage, had lived in adultery with her husband. But we are of opinion that it was error to refuse defendant the right of proving that she had been indulging in unlawful commerce with Clofander and others, which proof would clearly have tended to establish appellant's charge that she was "a whore."

The closing paragraph of the court's charge to the jury was that "if they (the jury) believe the defendant not guilty they will acquit him." With regard to a similar charge in *Brinkoeter* v. *The State*, 14 Texas Ct. App., 67, it was said, "by this charge the jury were in effect told that they must find the defendant guilty unless they believed from the evidence that he was innocent. Such a proposition is contrary to the express provision of the law." (*McMillan* v. *The State*, 7 Texas Ct. App., 142; Code Crim. Proc., art. 640.)

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered February 11, 1885.]